832 So.2d 209 (2002)
John BROCK, Appellant,
v.
WESTPORT RECOVERY CORPORATION, Appellee.
No. 4D02-99.
District Court of Appeal of Florida, Fourth District.
December 4, 2002.
*210 Marshall J. Osofsky of Moyle, Flanigan, Katz, Raymond and Sheehan, P.A., West Palm Beach, for appellant.
Robert D. Friedman of Friedman & Greenberg, P.A., Plantation, for appellee.
GROSS, J.
John Brock appeals the issuance of a continuing writ of garnishment. We affirm the trial court's finding the "head of family" exemption under section 222.11, Florida Statutes (2001) did not apply; however, we quash the continuing writ of garnishment because Brock's earnings were not "salary or wages" within the meaning of section 77.0305, Florida Statutes (2001).
First Union National Bank of Florida obtained a final judgment against Brock for $13,276.83. First Union caused a writ of continuing garnishment against salary or wages to be issued to Brock's employer, All Island Exports, Inc. All Island's answer to the writ of garnishment stated that Brock was the vice president of the corporation and that he did not earn a "salary" or "wages," but instead took a disbursement of $2,000 from company profits once every two weeks.
Brock filed a motion to dissolve the writ of garnishment, a claim for exemption under section 222.11, and a request for hearing. Sworn to by Brock as an affidavit, the motion stated that Brock was the "head of family" within the meaning of the *211 statute and that he did not receive a "salary" or "wages" that could be garnished, but instead took a "disbursement from profits." First Union filed an affidavit in opposition to Brock's claim of exemption. After First Union assigned its claim to appellee Westport Recovery Corporation, Westport moved for the issuance of a writ of continuing garnishment.
The trial court held a hearing on the pending motions. Brock was the only witness. Contrary to the allegations in All Island's answer and the statements in his sworn motion, Brock testified that he received a salary of about $56,000 per year, being paid once every two weeks on a regular basis. He claimed his salary never fluctuated.
Brock and his brother were the principals of All Island. Somewhat confusingly, Brock testified that he owned fifty percent, or forty-nine percent, or zero percent of the company; "technically" his brother was "a hundred percent shareholder," but they had an agreement that they would be "partners." Brock was the vice president of operations, overseeing warehouse employees, and his brother took care of sales.
Brock's 2000 tax return reflected wages or salary of $56,000 and partnership/S-corporation income of $94,859. His 1999 tax return showed wages or salary of $108,000 and partnership/S-corporation income of $57,000. There was no dispute that Brock was the head of a household.
The trial judge denied appellant's motion to dissolve the writ of garnishment and claim for exemption. The court entered a writ of continuing garnishment against salary or wages.
Brock first argues that the trial court erred in failing to apply the statutory exemption for head of household. Here, because the trial court made no specific findings of fact in its final orders, this court must accept the facts to be those shown by the evidence most favorable to Westport, the prevailing party. See New Nautical Coatings, Inc. v. Scoggin, 731 So.2d 145, 146 (Fla. 4th DCA 1999). At the hearing, it was Brock who bore the burden of proving his entitlement to the statutory exemption. See Cadle Co. v. G & G Assocs., 757 So.2d 1278, 1279 (Fla. 4th DCA 2000). Courts examine the totality of the circumstances to determine whether the exemption is applicable. See In re Pettit, 224 B.R. 834, 839 (Bankr.M.D.Fla. 1998).
Under section 222.11(2)(b), "[d]isposable earnings of a head of family, which are greater than $500 a week, may not be attached or garnished unless such person has agreed otherwise in writing." Brock made no agreement in writing. Thus, the critical aspect of this appeal is whether Brock's income is classified as "earnings" within the meaning of the statute. Section 222.11(1)(a), states that "`[e]arnings' includes compensation, paid or payable, in money of a sum certain, for personal services or labor whether denominated as wages, salary, commission, or bonus." (Emphasis added).
To decide whether monies from employment qualify for the section 222.11(2)(b) exemption, the relevant inquiry is often whether a person's employment is a salaried job or is in the nature of running a business.
In In re Manning, 163 B.R. 380 (Bankr. S.D.Fla.1994), the court held that "a debtor that owns or controls a business cannot exempt the funds he distributes to himself from the business simply by calling the money `wages.'" Id. at 382. There, the debtor's wife owned 100 percent of the stock of a general contracting corporation. Id. at 381. As the president of the company, the debtor was responsible for the corporation's day-to-day operations. He *212 had no written employment contract, and established his own "salary," including commissions and bonuses. Id. Thus, the court concluded that the debtor was not entitled to the exemption where the amount and timing of compensation was determined by the debtor and "essentially constituted discretionary distributions from the family owned business." Id. at 382.
"For the exemption to apply, the debtor must not only perform personal services to the business, he must also receive regular compensation dictated by the terms of an arms-length employment agreement." Id.; see also In re Harrison, 216 B.R. 451, 454 (Bankr.S.D.Fla.1997) (holding that the debtor was not entitled to the exemption where his employment agreement was enforceable only by himself and the other shareholder, and where they controlled the timing and amount of their compensation: "They made all decisions about when they got paid and how much they received; the payment of their wages [was] purely discretionary").
Likewise, in In re Zamora, 187 B.R. 783 (Bankr.S.D.Fla.1995), the court concluded that an attorney's compensation from his own law practice did not qualify as earnings under section 222.11. "[T]he relevant inquiry is whether the debtor's activities were essentially a job or whether they were in the nature of running a business." Id. at 785. There, the debtor had complete control over the amount of his compensation and the terms of his employment. Id. There was no arms length employment agreement between the debtor and his legal practice/corporation, and the debtor was essentially running a business rather than working at a job. Id. The court explained why someone in the debtor's position should not receive the benefit of the exemption:
An employee has regular earnings pursuant to an employment agreement. He or she is paid directly for personal labor or services. By contrast, this Debtor and others similarly situated who run their own businesses, have control over the timing and amount of their compensation. Certainly, the legislature did not intend to exempt all funds a person chooses to "draw" from a business where the individual has full discretion over what expenses to pay or not pay in order to fund the draw.
Id.
Based on the evidence before him, the trial judge could have concluded that, like the debtors in Zamora and Manning, Brock's compensation was made up of discretionary distributions from a family-owned business. There was no formal employment agreement between Brock and the business. The business was family-owned. Brock's earlier sworn filing characterized his earnings as disbursements from profits. Brock's two week pay stub did not correspond with his year to date earnings. Brock did not satisfactorily explain why his distributions from the corporation decreased from $108,000 in 1999 to $56,000 in 2000. We therefore affirm the trial court's ruling that the section 222.11(2)(b) exemption does not apply.
If Brock's earnings do not qualify for the exemption because they were not "compensation, paid or payable in money of a sum certain, for personal services or labor," then Westport may not reach such compensation with a continuing writ of garnishment.
Under section 77.0305, a continuing writ of garnishment is available to garnish "salary or wages." The statute contemplates regular payment of salary or wages. The continuing writ to the debtor's employer "provides for the periodic payment *213 of a portion of the salary or wages of the judgment debtor as the salary or wages become due...." Id.
"Words of common usage, when employed in a statute, should be construed in their plain and ordinary sense." Zuckerman v. Alter, 615 So.2d 661, 663 (Fla. 1993). "Salary" is defined as: "An agreed compensation for services-esp. professional or semiprofessional services-usu. paid at regular intervals on a yearly basis...." BLACK'S LAW DICTIONARY 1336 (7th ed.1999). "Wage" is defined as "Payment for labor or services, usually based on time worked or quantity produced." Id. at 1573. "Salary or wages" under section 77.0305 falls within the section 222.11(1)(a) definition of "earnings"; the latter statute includes the terms "wages" and "salary" within its description. Brock's earnings did not qualify for the exemption because they were not "compensation, paid or payable, in money of a sum certain, for personal services or labor ...." § 222.11(1)(a). Therefore, such earnings would not support a continuing writ of garnishment, which reaches "salary or wages." See Cadle Co. v. G & G Assocs., 737 So.2d 1136, 1140-41 (Fla. 4th DCA 1999) (indicating that continuing writ of garnishment not available to garnish "draws, expense reimbursement, and capital account disbursements"). We therefore quash the order of continuing writ of garnishment against salary or wages.
KLEIN and TAYLOR, JJ., concur.